John P. Perkins, III
SHULTS, BROWN & PERKINS, LLP
200 W. Capitol Avenue, Suite 1600
Little Rock, Arkansas 72201-3637
(501) 375-2301
jperkins@shultslaw.com
Cal. Bar No. 262757
*Attorney for Plaintiffs*

Mara Faust
Deputy Attorney General
State of California, Department of Justice
1300 I Street, Suite 125
Sacramento, California 94244-2550
(916) 324-5358
Mara.faust@doj.ca.gov
Cal. Bar No. 111729
*Attorney for Medical Board of California*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE; SHREEKANTH CHERUKU; ANJAN PATEL; AMBER MILWARD; and JUSTIN T. HARNEY Plaintiffs, v. THE MEDICAL BOARD OF CALIFORNIA Defendant. | **JOINT STATEMENT re DISCOVERY DISAGREEMENT**<br>CASE NUMBER: 2:10-MC-0041 (FCD) (DAD) |

Pursuant to Local Rule 251, American University of Antigua College of Medicine ("AUA"), Shreekanth Cheruku, Anjan Patel, Amber Milward, and Justin T. Harney, plaintiffs in the underlying action, and The Medical Board of California, submit this Joint Statement re Discovery Disagreement and state as follows:

**1. Details of meet and confer conferences**

On January 7, 2010, plaintiffs subpoenaed the Medical Board of California for documents relevant to its underlying litigation against the Arkansas State Medical Board. *See* Exhibit J to Original Motion to Compel (docket no. 1). Included in the categories of requested documents were all documents reviewed or considered by the Medical Board of California in determining which foreign medical schools to include on its lists of "approved" and "disapproved" foreign medical schools. *Id.* at Schedule "A" ¶ 5-6. The Medical Board of California responded on January 19, 2010, with various objections, including the assertion that documents responsive to the subpoena were privileged under the deliberative process privilege. *See* Exhibit K to Original Motion to Compel. The parties negotiated in good faith, and reached an agreement regarding the production of the majority of the documents responsive to plaintiffs' subpoena.

The parties exchanged correspondence regarding the deliberative process privilege, but an agreement could not be reached regarding the scope of that privilege. *See* Exhibits L and M to Original Motion to Compel. A rolling production of other responsive documents began. *Id.*

The parties exchanged further correspondence and telephone calls regarding the scope of the deliberative process privilege in May, 2010, without success. From May through June, 2010, the Medical Board of California provided privilege logs detailing the documents responsive to categories 5 and 6 of the subpoena that were being withheld under the privilege. Finally, on July 20, 2010, the parties held a telephone conference regarding their respective positions on the scope of the deliberative process privilege, but an agreement could not be reached on whether the Medical Board of California's assertion of the privilege was proper.

**2. Nature of the Action and its Factual Disputes**

Plaintiffs allege in the underlying lawsuit that the Arkansas State Medical Board included AUA on its list of "disapproved" foreign medical schools based solely on the fact that AUA was not included on the Medical Board of California's list of "approved" schools, which meant AUA's graduates were not recognized for licensure in California. *See* Exhibit A to Motion to Compel at 2, 10, 16-17.

Plaintiffs further allege in the underlying lawsuit that the Medical Board of California's regulation regarding the licensure of foreign medical graduates, CAL. CODE REGS. Tit. 16, § 1314.1, and the practices of the Medical Board of California in the interpretation and application of that regulation, intentionally discriminate against citizens of the United States of America. *See* Exhibit A to Original Motion to Compel at 16-18. Plaintiffs contend that the Medical Board of California subjects foreign medical schools located in the Caribbean and Central American region, whose students are predominantly citizens of the United States, to intense, time-consuming, arbitrary, non-objective, and costly evaluation before approving these foreign medical schools and awarding licenses to their graduates. *See* Exhibit A to Original Motion to Compel at 14, 17.

In contrast, plaintiffs allege that the Medical Board of California provides little to no review of foreign medical schools located outside the Caribbean or Central American region whose student bodies are predominantly not citizens of the United States, for example, foreign medical schools located in India or Pakistan. *See* Exhibit A to Original Motion to Compel at 17.

Plaintiffs contend that the Arkansas State Medical Board, in adopting the Medical Board of California's lists of "approved" and "disapproved" foreign medical schools,

violated plaintiffs' substantive due process rights and violated their equal protection rights, given the Medical Board of California's disparate review of foreign medical schools whose student bodies are predominantly United States citizens. *See* Exhibit A to Original Motion to Compel at 19-22.

**3. <u>Contentions of Each Party</u>**

Categories 5 and 6 of the subpoena served upon the Medical Board of California requested as follows:

> 5. All documents reviewed or considered from January 1, 1989, through the present by the Medical Board of California in determining to include each of the medical schools on its list of "approved" foreign medical schools.
>
> 6. All documents reviewed or considered from January 1, 1989, through the present by the Medical Board of California in determining to include each of the medical schools on its list of "disapproved" foreign medical schools.

The list of documents responsive to these requests that the Medical Board of California has withheld from production on the basis of the deliberative process privilege were provided to plaintiffs in privilege logs, which can be made available to the Court. The parties' contentions regarding whether these documents are properly being withheld pursuant to the privilege are provided below.

***A. <u>Plaintiffs' Contentions</u>***

Plaintiffs move the Court to compel the Medical Board of California to produce the documents improperly withheld on the basis of the deliberative process privilege. First, the deliberative process privilege does not apply to this case because the Medical Board of California's decisionmaking regarding the approval and disapproval of foreign medical schools is central to plaintiffs' case. Second, the Medical Board of California has not satisfied its burden to demonstrate that the deliberative process privilege is applicable to

the withheld documents. Finally, even if the Medical Board of California could establish that the privilege is applicable, the documents should be produced because plaintiffs' need for the materials and the need for accurate fact-finding override the Board's interest in non-disclosure.

*1. Deliberative Process Privilege*

The deliberative process privilege exempts from discovery information reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. *FTC v. Warner Comm's., Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The deliberative process privilege is designed to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny. *Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

To qualify for protection under the deliberative process privilege, the party asserting the privilege must prove that the documents in question are both "predecisional" and "deliberative." *Carter v. United States Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002); *North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1121 (N.D. Cal. 2003).

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." A predecisional document is a part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Carter*, 307 F.3d at 1089 (*quoting Assembly of California*, 968 F.2d at 920 (internal citations omitted)). Stated another way, to be "predecisional" the document or testimony "must have been generated before the adoption of [a] policy or decision." *FTC*, 742 F.2d at 1161; *see also National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975) (noting that "communications made after the decision and designed to explain it" are not privileged). To be deliberative in nature it must contain "opinions, recommendations, or advice about ... policies [or decisions]." *FTC*, 742 F.2d at 1161; *North Pacifica, LLC*, 274 F.Supp.2d at 1121-22.

The burden of establishing application of the deliberative process privilege is on the party asserting it. *See, e.g., North Pacifica, LLC*, 274 F.Supp.2d at 1121; *Thomas v. Cate*, 2010 WL 671254, at *2 (E.D. Cal. Feb. 19, 2010). "When deciding which documents are privileged as part of the deliberative process, and thus exempt from discovery, courts should construe the privilege narrowly and strictly." *California Native Plant Society v. U.S. E.P.A.*, 251 F.R.D. 408, 410 (N.D. Cal. 2008). "The privilege 'must be strictly confined within the narrowest possible limits consistent with the logic of its principles.'" *In re McKesson Governmental Entities Average Wholesale Price Litigation*, 264 F.R.D. 595, 601 (N.D. Cal. 2009).

Further, in order for documents to be protected under the privilege, two preliminary procedural requirements must be satisfied: (1) there must be a "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer," *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing *Unites States v. Reynolds*, 345 U.S. 1, 7-8 (1953)), and (2) the information for which privilege is claimed must be specified and "precise and certain

AO 72
(Rev 8/82)

reasons" given for asserting confidentiality. *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980); *see also In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988).

Finally, the deliberative process privilege is a qualified privilege. *See FTC*, 742 F.2d at 1161. Materials that are otherwise protected may become a part of the administrative record if the litigant's "need for the materials and the need for accurate fact finding override the government's interest in non-disclosure." *Id.*

2. *Privilege Does Not Apply Because the Medical Board of California's Decisionmaking is Central to Plaintiffs' Civil Rights Case*

The deliberative process privilege does not apply to this action because the Medical Board of California's decisionmaking process in approving or disapproving foreign medical schools is the central aspect of plaintiffs' underlying claims for violation of their equal protection and substantive due process rights. The majority of courts have held that the deliberative process privilege does not apply in actions such as these, where the government's decisionmaking is central to the plaintiff's case. *See, e.g., In re Subpeona Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424-25 (D.C. Cir. 1998); *United States v. Lake County Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005); *Scott v. Board of Education of the City of East Orange*, 219 F.R.D. 333, 337-38 (D.N.J. 2004).

As the Court of Appeals for the District of Columbia explained in *In re Subpeona:*

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. The Supreme Court struggled in *Crawford-El* and *Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The

> argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a nonsequitur. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'être evaporates.

*In re Subpeona,* 145 F.3d at 1425 (citations omitted).

In this case, plaintiffs' claims directly challenge the Arkansas State Medical Board's adoption of the Medical Board of California's approved and disapproved lists of foreign medical schools. The Medical Board of California's deliberations regarding whether to approve or disapprove particular foreign medical schools, the different process used for schools in the Caribbean whose student bodies are predominantly citizens of the United States, and more importantly, the intent in subjecting those schools to significantly more detailed and harsh review are the central questions in plaintiffs' claims. Further, as attached to plaintiffs' original motion to compel, there is evidence that the intent in discriminating against Caribbean medical schools is precisely because they target U.S. citizens for their student body. *See* Original Motion to Compel, Exhibits E-G.

The United States Supreme Court has held that, in order to prevail on an equal protection claim, a plaintiff must show that a particular defendant acted with discriminatory purpose. *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987). The mere showing that there is a discriminatory effect to a particular action or policy is not sufficient to establish an equal protection violation. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265-66 (1977); *Williams v. Anderson,* 562 F.2d 1081, 1087 (8th Cir. 1977). "Determining whether invidious discriminatory purpose was a

motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights*, 429 U.S. at 266.

Courts in the Ninth Circuit have yet to rule directly on whether the deliberative process privilege applies to circumstances where the government's deliberations and intent are central to the case, but courts in this District have noted that the reasoning and viability of the rule are sound. *See Thomas*, 2010 WL 671254, at *3. Further, this is certainly the type of case where the majority of courts would disregard the privilege and permit discovery. *See Lake County Bd. of Comm'rs*, 233 F.R.D. at 526 ("the deliberative process privilege simply does not apply in civil rights cases in which the defendant's intent to discriminate is at issue.").

*3. Board Has Not Satisfied its Burden to Show Documents are "Predecisional" or "Deliberative"*

Further, the Medical Board of California has not satisfied the procedural requirements to invoke the privilege, and it is unclear whether the documents being withheld are "predecisional" or "deliberative."

As discussed above, there are procedural requirements for the proper assertion of the privilege, which, in detail, are as follows:

> (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege; and (4) a showing that the material for which the privilege is asserted has been kept confidential.

*National Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *Thomas*, 2010 WL 671254, at *2.

The privilege only exists when raised by a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. *U.S. v. Reynolds*, 345 U.S. 1, 7-8 (1953). "The requirement that the privilege be invoked only by the head of the department after actual personal consideration has been promulgated to insure that the privilege remains a narrow privilege which is not indiscriminately invoked." *Rozet*, 183 F.R.D. at 665.

> Requiring the agency head to claim the privilege assures the court, which must make the ultimate decision, that executive privilege has not been lightly invoked by the agency, *Reynolds, supra,* and that in the considered judgment of the individual with an overall responsibility for the administration of the agency, the documents withheld are indeed thought to be privileged.

*Id.* (quoting *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 518 (D. Del. 1980)).

While the requirement that the privilege be invoked by the agency head is not always applied literally, *see e.g., Smith v. Federal Trade Comm'n,* 403 F.Supp. 1000, 1017 (D. Del. 1975) (allowing Chairman of the Federal Trade Commission to assert the privilege rather than the Secretary), the duty to invoke the privilege cannot be delegated down the chain of command so that the purposes of this requirement are undermined, *see Coastal Corp.,* 86 F.R.D. at 516-17 (disallowing the Assistant Administrator of a sub-agency to assert the privilege over Department of Energy documents rather than the Secretary of Energy). Therefore, courts have not permitted staff attorneys, as was done in this matter, to assert the privilege on behalf of the governmental agency. *See Rozet*, 183 F.R.D. at 665 (citing *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 43-44 (N.D. Tex. 1981); *Pierson v. U.S.*, 428 F. Supp. 384, 395 (D. Del. 1977)).

The purpose of this requirement is to assure "that someone in a position of high authority" within the agency has examined the materials "from a vantage point involving

both expertise and an overview-type perspective," and actually believes the items to be privileged. *Rozet*, 183 F.R.D. at 665. In this case, that was not done.

Further, and more to the privilege's overall application to this case, the Medical Board of California has not demonstrated that the withheld documents are "predecisional" or "deliberative." To claim the privilege, an agency must "specifically designate and describe the information that is purportedly privileged and give 'precise and certain' reasons for preserving the confidentiality of the requested information." *Greenpeace v. National Marine Fisheries Service*, 198 F.R.D. 540, 545 (W.D. Wash. 2000). Again, a document is only "deliberative" if its disclosure would frustrate the purposes of the privilege. *Carter*, 307 F.3d at 1089. Those documents that do not express subjective opinions or whose release is unlikely to expose an agency's decisionmaking process such as to discourage "frank and open discussions of ideas" must be released. *National Wildlife Fed'n*, 861 F.2d at 1117.

The privilege logs provided by the Medical Board of California do not describe the withheld documents with enough specificity to determine whether subjective opinions are expressed or whether disclosure would chill frank discussions. The logs include descriptions such as "12/28/04 memo from Pat Park to Harold Simon, M.D.," "06/14/03 e-mail from Pat Park to Ms. Banfit with consultant questionnaire (Szeged)," "05/90 hand written notes on Ross from Teresa Ciau at AUC," "11/97 notes relating to site visit AUC," "07/29/97 email from Neil Flippen to Pat Park." These descriptions do not provide enough specificity to make any determination about whether the documents involve deliberation, much less satisfy the Board's burden to establish the privilege. *See Thomas*, 2010 WL 671254, at *25 (finding the phrase "talking points regarding the Governor's parole review

authority" does not indicate whether the document is predecisional nor whether it implicates a part of the decisionmaking process that was not meant to be disclosed to the public). Those types of descriptions are the norm in the privilege logs provided by the Board.

Further, it is unclear who some of the people are who are indentified in the privilege log as receiving or drafting certain correspondence or memoranda. To the extent those individuals are outside the Board, those materials were not kept confidential and should be produced. *See, e.g., National Wildlife Fed'n,* 861 F.2d at 1117; *L.H. v. Schwarzenegger,* 2007 WL 2009807, at * 3 (E.D. Cal. Jul. 6, 2007) ("There must also be a showing that the material for which the privilege is asserted has been kept confidential.").

Since the Medical Board of California has not satisfied its burden to establish the privilege for these documents, they should be produced.

*4. Even if the Privilege is Applicable, the Documents Should be Produced*

Finally, even if the Court determines that the deliberative process privilege applies to this equal protection claim and the Board cures or remedies the procedural and proof problems regarding its assertion of the privilege, the documents should be produced because the need for the materials and the need for accurate fact finding override the Board's interest in non-disclosure.

The deliberative process privilege is a qualified privilege. *See FTC,* 742 F.2d at 1161. Materials that are otherwise protected may become a part of the administrative record if the litigant's "need for the materials and the need for accurate fact finding override the government's interest in non-disclosure." *Id.* Among the factors a court should consider in making this determination are: "(1) the relevance of the evidence; (2)

the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* Other factors may include: "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding; (6) the seriousness of the litigation and the issues involved; (7) the presence of issues concerning alleged governmental misconduct; and (8) the federal interest in the enforcement of federal law." *North Pacifica, LLC*, 274 F.Supp.2d at 1122.

First, the deliberative documents the Medical Board of California reviewed or considered when determining which schools to include on its lists of "approved" and "disapproved" foreign medical schools are highly relevant and necessary to establish plaintiffs' claims. Plaintiffs contend that the Arkansas State Medical Board determined who should be included on its list of "disapproved" foreign medical schools based solely on whether the Medical Board of California had approved that particular school. AUA, a medical school located in the Caribbean region, has not yet been recognized by the Medical Board of California, and, thus, was "disapproved" by the Arkansas State Medical Board.

As thoroughly detailed in the first amended complaint, plaintiffs allege that the Medical Board of California undertakes its review of foreign medical schools in an arbitrary, capricious manner and in a discriminatory manner against United States citizens. The Medical Board of California does this by subjecting Caribbean medical schools, whose students are predominantly United States citizens, to an extensive, costly and onerous review process which typically involves detailed questionnaires and on-site inspections. Foreign medical schools whose students are typically not United States

citizens, are not reviewed in any manner, much less subjected to time-consuming questionnaires or on-site inspections.

As detailed above, an element of plaintiffs' equal protection claim is discriminatory intent. The subjective opinions and documents used in the deliberations to approve or disapprove foreign medical schools are crucial to plaintiffs' claims.[1]

Second, the best evidence to determine the purposes, opinions, and deliberations of the Medical Board in subjecting certain foreign medical schools that apply for recognition from the Caribbean to harsh review, and the deliberative process used for those Caribbean schools as opposed to others, will most likely only be found in these withheld documents, or in deposition testimony. The purpose for subjecting Caribbean schools that cater to U.S. citizens to an onerous review process and why these schools are subjected to multiple questionnaires and site inspections has not been found in the Board's meeting minutes. Without the production of these documents, significant, if not essential discovery on plaintiffs' equal protection claim and the intent of the Medical Board of California would be foreclosed.

Third, the government's role in the litigation weights heavily in favor of disclosure. The fact that a governmental entity's action is the focal point of litigation weighs against upholding the deliberative process privilege. *See, e.g.*, *Thomas*, 2010 WL 671254, at *10. "Particularly, where the government's decision process itself is in question, discovery may

---

[1] On April 8, 2010, the Arkansas State Medical Board voluntarily amended its Regulation No. 3 doing away with its "disapproved" list of foreign medical schools. The issue of whether this rendered plaintiffs' claims for injunctive and declaratory relief moot has not been raised or decided in the underlying litigation. What is clear is that the voluntary amendment does not moot plaintiffs' claims for compensatory damages for violations of their constitutional rights (*see Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010)), and the Arkansas State Medical Board's reliance on the Medical Board of California to include AUA on its list of "disapproved" foreign medical schools for two years is still a central allegation in the underlying litigation.

be appropriate." *California Native Plant Society*, 251 F.R.D. at 415; *see also Greenpeace,* 198 F.R.D. at 543. For example, in both *Newport Pac. Inc.* and *North Pacifica* the government's decision-making process (and in *North Pacifica*, the intent of the decision-makers) was in question, and that is what "tip[ped] the scales in favor of disclosure." *Newport Pac. Inc.*, 200 F.R.D. 628, 640 (S.D. Cal. 2001); *North Pacifica, LLC*, 274 F.Supp.2d at 1124.

As stated in *U.S. v. Irvin*:

> Clearly, then, this is not the usual 'deliberative process' case in which a private party challenges governmental action or seeks documents via the Freedom of Information Act, and the government tries to prevent its decisionmaking process from being swept up unnecessarily into public. Here the decisionmaking process is not 'swept up into' the case, it *is* the case.... Thus, the Secretary's assertion of the privilege, if sustained, could have the harmful effect of preventing this Court from fulfilling its very mission on remand and depriving the Board of a full hearing on its case.

*U.S. v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989) (quoting *United States v. Board of Education*, 610 F. Supp. 695, 700 (N.D. Ill. 1985)). As detailed, the Medical Board of California's decision process for subjecting certain Caribbean schools to harsh review, the review process those schools are subjected to, and the intent of this onerous review are central to plaintiffs' claims.

Fourth, if these documents are, in fact, "predecisional" and "deliberative," their disclosure would most likely hinder frank discussion, which weighs against disclosure. When weighed against the other factors; however, disclosure is appropriate.

Fifth, the litigants' and society's interest in accurate judicial fact finding favors disclosure. *See Young v. City and County of Honolulu*, 2008 WL 2676365, at *6 (D. Haw. 2008) ("The interest in accurate fact finding always weighs in favor of disclosure"); *see also Thomas*, 2010 WL 671254, at *33. "In every case, the desirability of accurate fact

finding weighs in favor of disclosure. In this case, however, the interest in accurate judicial fact finding is heightened because equal protection rights are at stake." *North Pacifica, LLC*, 274 F.Supp.2d at 1124.

Sixth, the seriousness of the litigation and the issues involved, namely the equal protection rights of U.S. citizens and the arbitrary and capricious process for evaluating foreign medical schools, and thus their graduates, for medical licensure in Arkansas and California, strongly favors disclosure. *See Irvin,* 127 F.R.D. at 173; *Thomas*, 2010 WL 671254, at *33.

Seventh, there are issues present in this case regarding governmental misconduct. As discussed, plaintiffs' allege that the Medical Board of California discriminates against U.S. citizens in its review of foreign medical schools. This factor also weighs in favor of disclosure. *North Pacifica, LLC*, 274 F.Supp.2d at 1124 ("Because the City Council's motive and intent are central to NP's equal protection claim, and at issue is alleged governmental misconduct, these factors weigh strongly in favor of disclosure).

Finally, the federal interest in the enforcement of federal constitutional rights weighs heavily in favor of disclosure. In *United States v. Phoenix Union High School District,* the Ninth Circuit indicated that discovery of a decisionmaking body's minutes may be required to prove federal statutory violations even where state law guaranteed the minutes' confidentiality. 681 F.2d 1235, 1237-38 (9th Cir. 1982), *cert. denied*, 459 U.S. 1191 (1983). When the issues involved are alleged violations of federally-protected civil rights, courts have consistently found that the need is heightened and the deliberative process privilege is outweighed. *See id.*; *Newport Pacific,* 200 F.R.D. at 640; *Irvin,* 127 F.R.D. at 174.

Therefore, even if this Court determines that the privilege is applicable to these documents, the factors used to determine whether the need for the materials and the need for accurate fact finding override the Board's interest clearly weigh in favor of disclosure.

*5. Conclusion*

The underlying claim alleges that the Medical Board of California discriminates against U.S. citizens and applies an arbitrary and capricious process to the review of foreign medical schools to the severe disadvantage of Caribbean medical schools and their predominantly U.S. citizen graduates. Further, the Arkansas State Medical Board relied on this discriminatory process in disapproving American University of Antigua and other Caribbean medical schools. The intent and purpose of this discriminatory system is central to plaintiffs' claims, and the deliberative process privilege should not be applied. Further, the Medical Board of California has failed to satisfy its burden to assert the privilege by failing to have the head of the agency formally assert the privilege after personal consideration of the issue, and for failing to provide any of the required specificity to determine whether these documents are "predecisional" or "deliberative." Finally, even if the Court finds the deliberative process privilege applicable, the documents should be produced because the litigants' and society's need for the documents significantly outweighs the Board's interest in non-disclosure. Therefore, plaintiffs request that this Court compel the Medical Board of California to produce documents responsive to the subpoena, which it has refused to provide on the basis of the deliberative process privilege.

***B. The Medical Board of California's Contentions***

**INTRODUCTION**

On or about April 27, 2009, Petitioners, American University of Antigua College of Medicine, (hereinafter "AUA"), Shreekanth Cheruku, Anjan Patel, Amber Milward, and Justin T. Harney, filed a lawsuit against the Arkansas Medical Board, in case number 4:09-CV-306 SWW. The Medical Board of California is not a party to that action. On or about March 18, 2010, Petitioners filed a First Amended Complaint against the Arkansas Board. The status of that lawsuit is unknown to the Medical Board of California (hereinafter "Board"). On or about January 7, 2010, then Petitioners, now Plaintiffs, mailed a subpoena from the Arkansas case to the Board. *See*, Exhibit J, Subpoena attached to Plaintiffs' Motion to Compel Compliance with Subpoena.

In compliance with the Arkansas case subpoena, from February 2010 through April 2010, the Medical Board of California, then a non-party but now a Defendant in this matter, turned over and made available for inspection thousands of pages of documents. The documents came from the Board's rulemaking files related to section 1314.1 of Title 16 of the California Code of Regulations. In addition, these documents included Board staff minutes, memorandum and agendas from 1989 through 2010 that are associated with the approval or disapproval of international medical schools and 25 boxes of materials relating to foreign medical schools who applied for recognition from the Board with documents involved expert reports, site visits and curriculum from the various schools. *See*, correspondence (January through April 2010) from the Medical Board, Exhibits K, M, P, R and T attached to Plaintiffs' Motion to Compel.

On or about April 15, 2010, Plaintiffs filed a defective Motion to Compel with their Arkansas subpoena. On or about June 17, 2010, Plaintiffs filed an Amended Motion to Compel Defendant's compliance with the Arkansas subpoena under case number 2:10-MC-00041-FCD-DAD, which is the case before this court. Plaintiffs seek to compel Defendant to disclose documents that were withheld under the deliberative process privilege. Additional documents were turned over to Plaintiffs by Defendant from April 2010 through the present. On or about May 5, 2010,[2] Mr. Kurt Heppler, the in-house counsel for the Board, wrote to Plaintiffs counsel documenting Plaintiffs review of discovery boxes one through twenty-six, in compliance with the federal subpoena. On or about May 24, 2010, Mr. Heppler wrote to Plaintiffs'counsel identifying a twenty-seventh box of discovery and while documents were copied and mailed to Plaintiffs, the deliberative-process privilege was asserted by the Board's counsel on behalf of the Board. On or about May 27, 2010, Deputy Attorney General Mara Faust provided a Privilege Log for the withheld documents from discovery boxes one through twenty-six. On or about June 1, 2010, Ms. Faust wrote Plaintiffs' counsel expressing grave concerns that the discovery process was being used for improper purposes. On or about June 8, 2010, Mr. Heppler wrote to Plaintiffs' counsel also expressing concerns that Plaintiffs are using the discovery process for improper purposes, and mentioning that the scheduled deposition of Board member Barbara Yaroslavsky should not cover matters relating to her recommendations or opinions regarding AUA's application for recognition with the Board

[2] Defendant was prepared to attach all relevant documents but was told by the court clerk that the court did not want any attachments/exhibits to the joint statement nor would it entertain any response to the Amended Motion to Compel. Defendant will have all referenced documents available to the court should the court wish to review them. Board Executive Director Linda Whitney has also signed a Declaration supporting the Privilege Logs, which Defendant will have available to the court on the hearing date.

and that such use of the discovery process is an attempt to influence the outcome of the Board's process. On June 14, 2010, Ms Faust sent a second privilege log relating to the withheld documents from discovery box twenty-seven. On the same day Mr. Heppler wrote correspondence to Plaintiffs' counsel again asserting the deliberative-process privilege and citing case law. On or about June 22, 2010, Mr. Heppler wrote Plaintiffs' counsel and identified another three boxes of discovery and attached a privilege log for the disclosed documents.

## ARGUMENT

### I. BACKGROUND

#### A. THE BOARD'S AUTHORITY TO APPROVE OR DISAPPROVE FOREIGN MEDICAL SCHOOLS

The Medical Board of California has the authority under California Business and Professions Code sections 2084, 2089, and 2089.5 to approve or disapprove medical schools based on the schools' training requirements and the adequacy of its clinical instruction as part of its public protection mandate and/or policing powers. *See*, *Savelli v. Board of Medical Examiners*, 40 Cal.Rptr.171, 239 Cal.App.2d. 124 (App. 1 Dist. 1964), *cert. denied*, 85 S.Ct. 940, 380 U.S. 934, 13 L.Ed.2d 821. Medical schools located in the United States, Canada and Puerto Rico are deemed approved through the Medical Board through its accreditation by the Liaison Committee of Medical Education (hereinafter "LCME.") All other medical schools are subject to the Board's individual review and approval, and must demonstrate that they offer a resident course of professional instruction that is equivalent, not necessarily identical, to that provided in LCME-accredited medical

schools. The definition of "equivalency" for purposes of clinical instruction and training for foreign medical schools is described in Title 16 C.C.R. sections 1314 and 1314.1[3].

Typically, foreign medical schools become engaged in the California Medical Board process for approval when an applicant who graduated from a foreign medical school applies for licensure as a physician and surgeon in California. If the applicant graduated from a foreign medical school that has previously been approved by the Board, the application is processed and a medical school code is attached to that application. If the foreign medical school has not been previously approved, then Medical Board staff assesses whether that foreign medical school falls within Title 16 C.C.R. section 1314.1(a)(1) or (a)(2). Section 1314.1(a)(1), (hereinafter "(a)(1)"), schools are foreign medical schools that exist in a given country with the purpose of educating medical students that are citizens of that country and where those students generally plan to serve the population of that country as physicians. These (a)(1) medical schools are either "owned and operated" by the government, or they are bona fide nonprofit institutions registered with the government. Conversely, section 1314.1(a)(2 ) , (hereinafter "(a)(2)"), foreign medical schools primarily educate non-citizen students whose primary purpose is

---

[3] Section 1314.1 states in relevant part that "A medical school's resident course of instruction that leads to an M.D. degree shall be deemed equivalent to that required by Sections 2089 and 2089.5 of the code if the medical school offers the curriculum and clinical instruction described in those sections and meets one of the following:

(1) The medical school is owned and operated by the government of the country in which it is located or by a bona fide nonprofit institution registered with or otherwise approved by the country in which it is domiciled, the medical school is a component of a university offering other graduate and professional degree programs that contribute to the academic environment of the medical school, and the medical school's primary purpose is educating its own citizens to practice medicine in that country; or

(2) the medical board is chartered by the jurisdiction in which it is domiciled, the primary purpose of the medical school program is to educate non-citizens to practice medicine in other countries, and the medical school meets the standards set forth in subsection (b) below."

to practice medicine in a country other than where the medical school is located. Frequently, these schools operate in a "for profit" status. Often the students who graduate from section 1314.1(a)(2), medical schools want to practice medicine in the United States and a whole group of these schools are medical schools that teach their curriculum in English.

Plaintiff, AUA, has applied to the California Medical Board for approval and is currently going through that review process with the Board's expert giving his initial findings to the Board on July 30, 2010. AUA is an "(a)(2)" foreign medical school where the primary purpose is to educate non-citizen students who will practice medicine in a country other than where the medical school is located. The process for "(a)(2)" schools involves the medical school filling out a questionnaire, and supplying documentation regarding its curriculum and describing the physical school space (including the number of labs and classrooms, and type of equipment and number of books in the library, etc.). Thereafter, an expert consultant retained by the Board, evaluates the medical school's program to determine the equivalency of its clinical instruction and training to that required by the LCME, which is the accrediting entity for U.S. and Canadian medical schools. Typically, the Board's consultant reports his/her findings to the Board in a written and oral report and then additional questions, requests for documents, or a site visit may be required of the applying foreign medical school by the Board. After all the information is gathered and interpreted, the foreign medical school is either approved or

disapproved by the Board in a formal Board action.[4] Plaintiff, AUA, is in the middle of this application process to gain Board approval.

Plaintiff, AUA, is attempting to gain information about their own application approval process through the discovery subpoena in the Arkansas litigation. Defendant believes that AUA is seeking additional discovery in order to influence the Board's decision in the AUA application for approval. A court waiver of the Board's deliberative process privilege would allow AUA to improperly use the discovery process to try and influence the outcome of their own case.

## B. THE BASIS FOR THE BOARD'S DELIBERATIVE PROCESS PRIVILEGE

"The deliberative process privilege permits that government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated. [Citations omitted] It was developed to promote frank and independent discussion among those responsible for making governmental decisions." *Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

"The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally

[4] School "approval" means that the foreign medical school graduates may apply to California for licensure as physicians and surgeons. School "disapproval" means that the foreign medical school graduates are precluded from consideration for California licensure as physicians and surgeons until their medical school is either approved, or the potential applicant gains qualification through another licensing pathway and/or exemption.

formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. [Citation omitted]" *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "The primary rationale for the deliberative process privilege, which is analogous to the attorney-client privilege's underlying purpose, is that 'effective and efficient governmental decision making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.' [Citation omitted]." *Bobkoski v. Board of Ed. Cary Consolidated School District,* 141 F.R.D. 88 (N.D. Ill. 1982).

"A document must meet two requirements for the deliberative process privilege to apply. First, the document must be pre-decisional — it must have been generated before the adoption of the agency's policy or decision." *Federal Trade Commission v. Warner Communications, Inc*., 742 F.2d 1156, at 1161 (9th Cir. 1984.) "Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies" *Id.* at 1161.

In this case, each of the privileged documents is pre-decisional in that the documents withheld from each school precede that Board's final action or that the school in question never sought Board approval. With respect to discovery box 1[5], the materials, for Debrecen, which date from 2002-2004, precede the Board's granting recognition of the English-language program at the University of Debrecen on April 21, 2005. With respect to discovery box 4, the materials dated from February through May 1990 for Ross

[5] Box 1 is identified in the Privilege Log attached to Plaintiffs' Amended Motion to Compel.

AO 72 (Rev. 8/82)

University, and the Board granted full recognition of Ross University effective June 30, 1990. With respect to discovery box 7 and box 22, Silesia never perfected its request to the Board for recognition so the Board never acted. With respect to discovery box 10, the materials for American University of the Caribbean, (hereinafter "AUC"), dated February 1990 through May 1990 pre-date the site visit that occurred in 1998 for the AUC-St. Maarten campus. With respect to discovery box 11, the materials for AUC are dated from 1996-1997,[6] in which all pre-date the 1998 site visit. With respect to discovery box 12, the December 2004 documents relate to Saint Mathews, despite the box being marked AUC, and St Mathews was disapproved on February 18, 2005. With respect to discovery box 13, the materials are dated in 1994 and 1996, and the Board disapproved Universidad Tecnologica de Santiago, (hereinafter "UTESA"), on February 7, 1997. With respect to discovery boxes 24 and 25, the materials dated from 2007 and January through March 2008, both Lublin and Escuela Latinamericana de Medicina, (hereinafter "ELAM"), were approved on July 25, 2008. With respect to discovery box 25, the materials withheld for Saint George, United Kingdom campus, date from February 2009 and St. George was approved at the July 23-24, 2009 Board meeting. With respect to discovery box 25, the withheld materials date from July 7, 2007 and Jagiellonian was approved on July 27, 2007.[7] With respect to discovery box 27, the withheld documents relate to SABA University from 2002 and 2003 and SABA was approved by the Board on November 5,

---

[6] The 6/28/98, 6/30/98, and 7/16/98 correspondence, as well as the 8/28/98 e-mail relate to a planned site visit to four schools in the Philippines, which bears no relationship to AUC.

[7] There was also a Dr. Simon draft report dated 7/5/06 that was withheld in the 6/22/10 Privilege Log that also pre-dates any Board action.

2004. With respect to the withheld document from March 8, 2005, this pre-dates the Board's Approval of PECS University on May 3, 2005.

All of the documents that were withheld under the deliberative process privilege contain opinions, recommendations, or advice about agency policies. Many of these withheld documents are drafts of documents that were later finalized and presented at Board meetings, which were subsequently turned over to Plaintiffs in their final public form.

Lastly, the AUA memorandum, which was withheld under the deliberative process privilege, (identified in the June 22, 2010 privilege log) is correspondence from Board staff to the Board's retained expert consultant, and is precisely the type of document that the deliberative process privilege was designed to protect. For the AUA to receive such a document in discovery stemming from litigation in Arkansas, where the Board is not a party, would give Plaintiffs inside information and improper access to the thought processes of both Board staff and its expert in the ongoing recognition process in which the AUA and the Board are involved. For Plaintiffs to demand this kind of information while AUA is seeking recognition from the Board could be perceived by defendant as a form of bullying.

### C. PLAINTIFFS SEEK DISCOVERY THAT IS NO LONGER RELEVANT TO THE ARKANSAS LAWSUIT

According to Mr. Ohrenberger of the Arkansas Attorney General's Office, the Arkansas rule relying in part on Board approval or disapproval orders of "(a)(2)" foreign medical schools has been withdrawn and Arkansas now evaluates each application individually. If this is in fact the case, then Plaintiffs' attempts to gain discovery from the

Board are not relevant to the Arkansas suit. Plaintiffs claim there is still the issue of damages to the reputation of the name of the school in their Arkansas suit. However, according to Mr. Ohrenberger, the individual Plaintiffs, have yet to apply to Arkansas for licensure so there is a standing to sue issue as well

## CONCLUSION

For the above mentioned reasons, Plaintiffs should be denied their motion to compel the production of the Board's documents withheld under the deliberative process privilege. In the alternative, the court may, in its discretion, calendar an in-camera hearing date, where all of the documents, which were withheld under the deliberative process privilege, can be reviewed by the court sitting alone.

DATED: July 22, 2010.

Leonard A. Sclafani
LEONARD A. SCLAFANI, P.C.
2 Wall Street – 5th Floor
New York, New York 10005
(212) 696-9880

SHULTS, BROWN & PERKINS, LLP
200 West Capitol Avenue, Suite 1600
Little Rock, AR 72201-3637
(501) 375-2301

By: /s/ John Perkins
John P. Perkins, III
Cal. Bar No. 262757
Ark. Bar No. 2005252

*Attorneys for Plaintiffs*

Deputy Attorney General
State of California, Department of Justice
1300 I Street, Suite 125
Sacramento, California 94244-2550
(916) 324-5358

By: /s/ Mara Faust (as authorized on July 22, 2010)
Mara Faust
Cal. Bar No. 111729

*Attorneys for Medical Board of California*

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2010, I mailed by first class U.S. mail and I electronically filed this Joint Statement re Discovery Disagreement with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Mara Faust
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, California 94244-2550

Further, this Joint Statement re Discovery Disagreement was served on the following counsel of record in the underlying litigation, *American University of Antigua College of Medicine, et al. v. Arkansas State Medical Board, et al.*, United States District Court - Eastern District of Arkansas, Case No. 4:09-CV-00306SW, by first class U.S. Mail:

Mark N. Ohrenberger
Arkansas Office of Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201-2610
Mark.ohrenberger@arkansasag.gov

By: /s/ John Perkins
John P. Perkins, III